**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| Anaqua, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. N14M-10-278 |
| Mark Bullard, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

Date Submitted: April 20, 2015
Date Decided: May 11, 2015

**ORDER**

**THIRD PARTY LECORPIO, LLC'S MOTION TO QUASH PLAINTIFF'S OUT-OF-STATE SUBPOENA IS GRANTED IN PART.**

Theodore A. Kittila, Esq., Greenhill Law Group, LLC., 1000 N. West Street, Suite 1200., Wilmington, DE, 19801.  Attorney for Anaqua.

Sharon Oras Morgan, Esq., Kasey H. DeSantis, Esq., Fox Rothschild, LLP., 919 N. Market Street, Suite 300, Wilmington DE, 19801.  Attorneys for Third-Party Lecorpio.

**MANNING**, Commissioner

Before the Court is Third-Party Lecorpio's Motion to Quash portions of Plaintiff Anaqua's out-of-state subpoena. Lecorpio argues that Anaqua's subpoena improperly seeks to obtain confidential trade secret information of Lecorpio.

## Facts and Procedural History

The genesis of this litigation is defendant Mark Bullard's previous employment with Plaintiff, Anaqua, in Massachusetts. Bullard is now an employee of Lecorpio, a Delaware LLC., with its headquarters and principal place of business in California. Anaqua and Lecorpio are direct competitors in the esoteric field of intellectual property asset management software ("IP Systems")—hence the rub.

The parties do not dispute the basic facts of the case thus far. Bullard worked for Anaqua as Vice President of Sales and served on its executive team starting in 2008. At the time Bullard was hired he signed a standard confidentially agreement and a world-wide twelve (12) month non-competition and non-disclosure agreement that would take effect upon termination of his employment with Anaqua, whether voluntary or otherwise. On September 20, 2013, Bullard terminated his employment with Anaqua, ostensibly to take time off to write a book, which he apparently did.[1]

On May 1, 2014, Lecorpio issued a press release stating that Bullard had joined Lecorpio's team as Vice President of product management and that he had previously been Vice President of sales for Anaqua. Undoubtedly surprised, Anaqua filed suit against Bullard and Lecorpio in the Superior Court for the Commonwealth of Massachusetts on May 6, 2014. Anaqua alleged two counts of breach of contract by Bullard, one for competition and one for trade secrets. Anaqua also alleged one count of tortious interference with contractual relations by Lecorpio. Anaqua claimed that

---

[1] *Pillows for Your Prison Cell*, Mark D. Bullard, Brainsquall (May 20, 2014).

Lecorpio knew of Bullard's non-competition clause but hired him anyway, going so far as to agree to indemnify him from any claims by Anaqua. Litigation ensued, and on July 24, 2014, Lecorpio was dismissed from the Massachusetts action for lack of personal jurisdiction. Bullard, however, was preliminarily enjoined from employment with Lecorpio for a period of 150 days (the balance of the 12 month non-competition clause), required to post a security bond with the court in the sum of $150,000.00, and ordered not to disclose or provide to Lecorpio, or others, any confidential information and/or trade secrets of Anaqua.[2] On the same day, the Massachusetts Court also entered an Order for a protective order and expedited discovery by way of document production and depositions, including Bullard himself.

On or about October 2, 2014, counsel for Anaqua deposed Bullard—to an extent. Bullard produced one single page in response to the document production request. Bullard claimed that much of what Anaqua sought was on his company (i.e. Lecorpio's) laptop computer and he could not (or would not) access it. Unhappy with Bullard's obstreperous responses, Massachusetts counsel for Anaqua sought relief with the Massachusetts Superior Court. No longer having personal jurisdiction over Lecorpio to compel cooperation with the subpoena, Anaqua sought, as was granted, an Order of Commission by the Commonwealth of Massachusetts. The Order of Commission, issued pursuant to Mass. Gen. Laws ch. 223A § 10(a)(2), authorized "the appropriate judicial authority in the State of Delaware to issue a subpoena" to Lecorpio's registered agent for service in Delaware. The Order of Commission was filed in the New Castle County Superior Court on October 30, 2014 and an out-of-state Subpoena *duces tecum* was

---

[2] *See* Memorandum and Order, Commonwealth of Massachusetts Superior Court Civil Action No. 14-1491-BLS1, Billings, Justice of the Superior Court, July 24, 2014.

issued to Lecorpio pursuant to 10 *Del. C.* § 4311.[3] On November 19, 2014, Lecorpio filed its Objections to Plaintiff's Out-of-State Subpoena. By December 5, 2014, Lecorpio's objections had morphed into a full-blown Motion to Quash Anaqua's Out-of-State Subpoena and thus this Court's involvement in the litigation.

In the interim, Anaqua served Bullard and Lecorpio a cease and desist letter on May 19, 2014. In response, Bullard marched into court in California, his new state of residence, and filed suit against Anaqua seeking declaratory relief from the non-competition contract. On December 24, 2014, the Superior Court of California, County of Alameda, issued an Order declaring that the non-competition agreement between Bullard and Anaqua, and the choice of law provision in the contact, was unenforceable and void as a matter of California law.[4]

Back in Delaware, Lecorpio now moves to quash the following deposition topics and document production requests made pursuant to Anaqua's Subpoena:

<u>Deposition Topics</u>

<u>Topic 2</u>: Your communication with Bullard regarding Anaqua, including, but not limited to, communications with Bullard regarding Anaqua's Products, Anaqua's sales efforts and/or methodology, Anaqua's pricing and pricing methodology, Anaqua's roadmaps and software development plans, and Anaqua's clients or prospective clients.

<u>Topic 4</u>: Bullard's input, suggestions, contributions, recommendations, and/or proposals regarding Lecorpio's Development Plans and Roadmaps.

<u>Topic 5</u>: Lecorpio's software features, functions, capabilities, and/or modules as those software features, functions, capabilities and/or modules existed on the date Lecorpio first communicated with Bullard.

---

[3] *See* 10 *Del. C.* § 4311, Delaware Uniform Interstate Depositions and Discovery Act.
[4] *See Bullard vs. Anaqua, Inc.*, Superior Court of California, County of Alameda, Order, No. <u>RG14725925,</u> Harbin-Forte, Judge (Dec. 24, 2014).

Document Production

Request 5. All communications (1) between Lecorpio and
Bullard regarding the Identified Customers; (2) between Bullard and the Identified
Customers; and/or (3) between Lecorpio and the Identified Customers regarding,
mentioning, or referencing Bullard.[5]

Request 9. Lecorpio's Development Plans and Roadmaps to the extent that such
Development Plans and Roadmaps reflect, include, or contain any input, suggestions,
contributions, recommendations, and/or proposals by Bullard.

Request 10. Any and all lists or descriptions of Lecorpio's software, functions,
capabilities, and/or modules as this features, functions, capabilities and/or modules
existed on the date Lecorpio first communicated with Bullard.

This Court held an initial hearing on the pending Motion to Quash on January 9, 2014; however, no ruling was made at that time. Lecorpio filed its Opening Brief in Support of its Motion to Quash the Out-of-State Subpoena on February 4, 2015. Anaqua filed its Answering Brief in Opposition to Lecorpio's Motion to Quash on February 18, 2015. Lecorpio filed a Reply in Further Support of Its Motion to Quash on February 23, 2015.

The Court held a second hearing on February 26, 2015. At that hearing, after argument by counsel and review of the parties' submissions, the Court issued a preliminary ruling and informed Anaqua that before it could reach the merits of some of the six disputed discovery items, Anaqua would need to file an Identification of Trade Secrets ("ITS") with the Court.

An office conference was held on March 6, 2015. At the office conference, Anaqua notified the Court that it intended to pursue the discovery topics and would file an ITS. The Court set a briefing schedule at that time and informed the parties that no further action will be taken without a Confidentiality Agreement between the parties in

---

[5] Revised as of March 5, 2015, per letter from counsel for Anaqua.

4

place.[6]  Anaqua submitted its ITS to the Court on March 20, 2015.[7]  At the request of the Court, Anaqua filed a Supplemental Response regarding the ITS on April, 1, 2015.  The parties subsequently stipulated to an extension of time, and Lecorpio filed its Response to Anaqua's ITS on April 20, 2015.  On April 27, 2015, Lecorpio filed an Objection and Response to Anauqa's March 5, 2015, revision to Document Request No. 5.

Briefing on the Motion to Quash is now complete and the issue is ripe for decision.

## Governing Law

Discovery in a civil case is generally controlled by Superior Court Civil Rule 26.  In this case, Lecorpio argues that the disputed deposition topics and documents Anaqua seeks will force it to reveal confidential and proprietary trade secret information.  When trade secret information is at issue, the dispute is controlled by Super Court Civil Rule 45(c)(3)(A).  Rule 45(c)(3)(A) states that "[o]n timely motion, the Court shall quash or modify a subpoena if it . . . (ii) requires disclosure of privileged information or other protected matter and no exception or waiver applies."

The Delaware Supreme Court has held that "[i]n cases involving trade secrets, the plaintiff is required to disclose, before obtaining discovery of confidential proprietary information of its adversary, the trade secrets it claims were misappropriated."[8]  Additionally, such a disclosure must be made with "reasonable particularity."[9]

---

[6] The parties subsequently completed and filed a Confidentially Agreement with the Court on March 20, 2015.

[7] Due to the sensitive nature of the information disclosed pursuant to the ITS, only the Certificate of Service was e-filed, the actual ITS documents were hand-delivered to the undersigned Commissioner.

[8] *See Smithkline Beecham Pharm. Co., v. Merck & Co.*, 766 A.2d 442, 447 (Del. 2000) (citations omitted).

[9] *Id*.

A "trade secret" has been defined as "information, including a formula, pattern, compilation, program, device, method, technique or process that derives independent economic value, actual or potential, from not being generally known, and not being readily ascertainable by proper means. . . ."[10]

**<u>Analysis</u>**

Anaqua filed a 104 page ITS with the Court, and a second supplemental filling, at the Court's request, explaining the ITS in greater detail, on March 26, 2015. The ITS document itself, labeled pages 000001 – 000104, consists largely of power-point slides, software screen-shots, release notes, and other internal company information. The ITS contains six general types of information: (1) release schedules, (2) product development, (3) release notes, (4) new capabilities, (5) product design, and (6) goals. Anaqua asserts that this information constitutes propriety trade secrets and was known by Bullard upon his departure on September 20, 2013.

It is apparent to the Court that Anaqua has made a good-faith effort to satisfy the ITS disclosure requirement and has made reasonable discovery demands based on the nature of the claims in the Massachusetts action. Some of the information provided in the ITS, while arguably stale at this point, would have certainly been valuable to a competitor in the IP Systems field in 2013—when Bullard jumped ship. Undoubtedly, Bullard left Anaqua with proprietary information that could have benefited Lecorpio, one obvious example being product pricing, something not publicly disclosed. However, as Lecorpio is quick to point-out, Anaqua can point to no direct evidence of disclosure or misuse of such information by Bullard; a fact also noted by the Massachusetts Court.[11]

---

[10] *See Savor, INC., v. FMR CORP.*, 2004 WL 1965869, at *6 (Del. Super. July 15, 2004).
[11] *See* Memorandum and Order, Commonwealth of Massachusetts, No. 14-1491-BLS1, at 26.

The irony of this litigation is not lost on the Court. Lecorpio seeks relief from this Court despite having created this situation by not respecting the non-competition agreement between Bullard and Anaqua. Undoubtedly Lecorpio knew that once Bullard became a California resident its lawyers could have the non-competition agreement quickly voided by a California court. However, while the Court is sympathetic to the position Anaqua finds itself in, the law is clear, before Anaqua can force Lecorpio to disclose trade secret information, Anaqua must first reveal the information allegedly misappropriated.[12] At this point, while Anaqua has disclosed a wealth of information, some of it confidential (much of it apparently not), Anaqua has only revealed information Bullard knew of, or at least had access to prior to his departure in 2013—*not information improperly disclosed.*[13]

Simply put, Anaqua is attempting to use the discovery process to search for evidence of Bullard's unlawful disclosure of trade secrets—evidence it does not currently possess. While Anaqua is understandably unhappy with the turn of events since Bullard so openly and flagrantly breached the non-competition agreement, Anaqua can't compel Lecorpio to disclose trade secret information in the hunt for the proverbial "smoking gun" it hopes and assumes must exist.[14]

---

[12] *See Smithkline*, 766 A.2d at 447.

[13] The Court does not reach, nor need decide, if the information Anaqua disclosed in its ITS meets the definition of a trade secret at this point.

[14] In *Savor, Inc. v. FMR Corp*., a misappropriation of trade secrets case with some similarities, the Delaware Superior Court granted summary judgment to the defendant where the plaintiff could offer no direct evidence that misappropriation had occurred. The plaintiff argued that misappropriation *must have occurred* and that the defendant had the motive and opportunity to misappropriate. *See Savor*, 2004 WL 1965869, at *8–9. While *Savor* was in a different procedural posture than this case, the Court's analysis is instructive.

Accordingly, pursuant to Rule 45(c)(3)(A), the Court will quash and/or modify the disputed topics as follows:

Deposition Topics

Topic 2: Motion to Quash—**DENIED**. This topic covers Anaqua's information and does not seek or implicate disclosure of Lecorpio's trade secrets in any way. Anything Bullard shared with Lecorpio *about* Anaqua is certainly fair game.

Topic 4: Motion to Quash—**GRANTED**. This topic would impermissibly require Lecorpio to disclose trade secret information without the requisite prior showing of unlawful disclosure by Bullard.

Topic 5: Motion to Quash—**GRANTED IN PART**. The Court will modify this topic to allow questioning about such information as it was *publicly known or available* on the date Lecorpio first communicated with Bullard.

Document Production

Request 5: Motion to Quash —**GRANTED IN PART**. The request is overbroad in its scope and implicates potentially privileged information and trade secrets. The Court will modify the request to require production about such documents that ". . . mention[], or reference[] Bullard *concerning or regarding his previous employment at Anaqua*."

Request 9: Motion to Quash—**GRANTED**. The request calls for the disclosure of Lecorpio's trade secret information without the requisite prior showing of unlawful disclosure by Bullard.

Request 10:  Motion to Quash—**GRANTED IN PART**.  The Court will modify this request to allow production of documents regarding information that was *publicly known or available* on the date Lecorpio first communicated with Bullard.

## Conclusion

Consistent with this Court's Scheduling Order of March 6, 2015, Lecorpio shall submit to deposition and document production, at its principal place of business, no later than 30 days from the date of this Order.

For the reasons set forth herein, Defendant's Motion is **GRANTED IN PART**.


**IT IS SO ORDERED**.


/s/ *Bradley V. Manning*
BRADLEY V. MANNING,
Commissioner

oc:     Prothonotary

9